UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-05106-SVW-SK | Date | October 17, 2018 |
| Title | *Eduardo Chavez v. Smurfit Kappa North America LLC, et al.* | | |

Present: The Honorable STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| | |
|---|---|
| Paul M. Cruz | N/A |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS [25]

## I. Introduction

On April 19, 2018, Plaintiff Eduardo Chavez filed this action, individually and on behalf of a putative class, against Defendant Smurfit Kappa North America LLC in state court. Dkt. 1-4 ("Compl."). Defendant removed the action to federal court on June 8, 2018 under the Class Action Fairness Act of 2005 ("CAFA"). Dkt. 1. Presently before the Court is Defendant's Motion for Judgment on the Pleadings ("Mot."), filed on August 20, 2018. Dkt. 25.

## II. Factual Background

From approximately December 2014 to approximately March 2018, Plaintiff worked for Defendant as a Die Cut Operator. Compl. ¶ 19; Dkt. 10 at 2. Plaintiff's wage rate started at $17 per hour. Dkt. 10-3. Plaintiff's position was covered by a Collective Bargaining Agreement ("CBA") with Local 388-M, a union affiliated with the International Brotherhood of Teamsters. Dkt. 10-3. The CBA provided for premium wage rates for all overtime hours worked, governed the circumstances and manner in which overtime was earned, and defined the method for computing the rate of pay used to calculate and pay overtime wages. Dkt. 26, Ex. A ("CBA"), §§ 6.1-6.9.[1] The CBA also dictated when

[1] The Court takes judicial notice of the CBA because "CBAs are properly considered materials that are not subject to reasonable dispute and are therefore proper for judicial notice." *Pyara v. Sysco Corp.*, 2016 WL

_______ : _______

Initials of Preparer PMC

meal and rest periods were allowed to be taken. *Id.* §§ 5.8, 5.13(B)-(C).

The CBA also provided for a grievance procedure involving arbitration. The procedure applied to "[a]ny disputes which ar[o]se as to the meaning, application or interpretation of [the CBA]" and dictated that "all disputes, grievances, complaints and adjustments pursuant to [the CBA] shall be settled in accordance with the grievance and arbitration procedure outlined herein." *Id.* §§ 7.1, 7.7. Furthermore, Section 5.8 of the CBA, which governed meal and rest breaks, provided that "[a]ny disputes concerning the application of this Section 5.8 shall be subject to final and binding arbitration pursuant to the [grievance] procedures set forth in Section 7 of this [CBA]." *Id.* § 5.8.

Plaintiff alleges that Defendant engaged in a pattern and practice of wage abuse against its hourly-paid employees within the State of California, which included failing to pay the employees for all regular and/or overtime wages earned and for missed meal periods and rest breaks. Compl. ¶ 26. Plaintiff brought claims for: (1) unpaid overtime (California Labor Code §§ 510 and 1198); (2) unpaid meal period premiums (California Labor Code §§ 226.7 and 512(a)); (3) unpaid rest period premiums (California Labor Code § 226.7); (4) unpaid minimum wages (California Labor Code §§ 1194, 1197, and 1197.1); (5) final wages not timely paid (California Labor Code §§ 201 and 202; (6) wages not timely paid during employment (California Labor Code § 204); (7) non-compliant wage statements (California Labor Code § 226(a)); (8) failure to keep requisite payroll records (California Labor Code § 1174(d)); (9) unreimbursed business expenses (California Labor Code §§ 2800 and 2802); and (10) violation of California Business & Professions Code §§ 17200, et seq. Compl. at 1.

## III. Legal Standard

After the pleadings are closed, but early enough not to delay trial, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when, taking all of the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law. *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006). In deciding a Rule 12(c) motion, the Court applies the same standards applicable to a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,

3916339, at *2 (E.D. Cal. July 20, 2016).

: 

Initials of Preparer PMC

637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Thus, the pleadings must allege facts to make it plausible, not merely conceivable, that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Mere conclusory statements are not enough; rather, there must be sufficient facts to allow the court to infer a defendant's culpability from the facts alleged in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a Rule 12(c) motion, the court should review "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (9th Cir. 2011) (citing *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). Under Federal Rule of Evidence 201, the Court may take judicial notice of facts "not subject to reasonable dispute." The Court may also take judicial notice of "undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

## IV. Analysis

### A. Applicable Law

#### *1. Preemption*

In some cases, Section 301 of the Labor Management Relations Act ("LMRA") has such "preemptive force . . . as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983) (quotation marks omitted). Indeed, preemption of state law causes of action has been extended to apply in some contexts to lawsuits that do not allege contract violations. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985).

In *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053 (9th Cir. 2007), the Ninth Circuit detailed a two-step approach for determining whether state law causes of action are preempted by the LMRA. The first step is "an inquiry whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Id.* at 1059. If the right "exists solely as a result of the CBA, then the claim is preempted" by the LMRA. *Id.* However, if the right does not exist solely as a result of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-05106-SVW-SK | Date | October 17, 2018 |
| Title | *Eduardo Chavez v. Smurfit Kappa North America LLC, et al.* | | |

CBA, then courts must proceed to the second step: determining whether the claim is "substantially dependent on analysis of a collective-bargaining agreement." *Id.* If the claim is substantially dependent on an analysis of a CBA, then the claim is preempted; if not, then the claim "can proceed under state law." *Id.* at 1059-60.

The two-step *Burnside* analysis merits further attention. With respect to the first step—determining "whether a particular right inheres in state law"—the Supreme Court requires that courts "consider 'the *legal* character of a claim, as independent of rights under the collective-bargaining agreement and not whether a grievance arising from precisely the same set of facts could be pursued." *Id.* at 1060 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)).

Under the second step, to determine whether a state law right is "substantially dependent" on the terms of a CBA, courts must distinguish between two circumstances: (1) whether a claim requires a court to *interpret* a CBA, and (2) whether it requires a court to *look to* a CBA. *Burnside*, 491 F.3d at 1060 (citing *Livadas*, 512 U.S. at 125). In the case of the former, the claim is preempted; in the case of the latter, it is not. *Id.* "Although the 'look to'/'interpret' distinction is not always clear or amenable to a bright-line test," *id.*, the Ninth Circuit has provided some guidance. For example, it has held that, in the context of LMRA preemption, "the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2016). Furthermore, the "simple need to refer to bargained-for wage rates in computing a penalty" is not enough to warrant preemption. *Burnside*, 491 F.3d at 1060. In addition, "in cases presenting the question whether the plaintiff's union bargained away the state law right at issue[,] a court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights . . . ." *Id.* (internal citation and quotation marks omitted).

Aside from the *Burnside* analysis, there are "cases in our circuit and in California that have held the particular rights at issue to be conferred as a matter of state law, and independent of the CBAs, in large part because the state legislature had been explicit about their inherit non-waivability." *Id.* at 1066, n.14. In other words, courts have established per se rules regarding LMRA preemption in the context of specific types of claims.[2]

[2] These cases appear to remain good law and thus binding precedent in the Ninth Circuit. However, the

: 

Initials of Preaparer PMC

In *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1076-82 (9th Cir. 2005), the Ninth Circuit, after surveying the relevant statutory provisions and legislative history, established a rule that the "right to meal periods applies to signatories of collective bargaining agreements and constitutes a nonnegotiable right under California state law." Put another way, "the substantive provisions mandating meal periods . . . [cannot] in any way be contravened or set aside by a private agreement, whether written, oral, or implied." *Id.* at 1078.

The Ninth Circuit has observed that the California Court of Appeal made a similar holding with respect to rest periods and wage-stub itemization. *Burnside*, 491 F.3d at 1066, n.14 (noting that the California Court of Appeal held that "rights related to 'rest periods and wage-stub itemization' were nonwaivable and nonnegotiable" because "state legislators had specified that these rights constituted 'minimum substantive guarantees' and that, through section 219 of the Labor Code, 'the Legislature has categorically forbidden the modification of any provision of these laws'") (quoting *Zavala v. Scott Bros. Dairy, Inc.*, 143 Cal. App. 4th 585, 596 (2006)).

*2. Arbitrability*

As a general matter, federal labor policy favors the use of the "contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). The upshot of this policy is that, when an employee alleges a violation of a CBA, the employee must first seek redress through any bargained-for grievance procedure that applies to the alleged violation before doing so in federal court. *Vaca v. Sipes*, 386 U.S. 171, 184 (1967) (holding that if an employee alleges "violation of [a CBA and if the . . .] employee himself resorts to the courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that

---

Court questions their continued viability, were they to be reviewed today, in light of recent Supreme Court cases. *See, e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612 (2018) (holding that the Federal Arbitration Act's saving clause does not provide a basis for refusing to enforce arbitration agreements waiving class action procedures for claims under state law); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (holding that the Federal Arbitration Act preempts California's judicial rule regarding the unconscionability of class arbitration waivers in consumer contracts).

the exclusive remedies provided by such a contract have not been exhausted"). As the Court in *Vaca* noted, this rule applies where "the employee's claim is based upon breach of the collective bargaining agreement." *Id.*

**B. Application of the Law**

*1. Unpaid Overtime and Unpaid Minimum Wages Claims (Claims 1 and 4)*

Section 514 of the California Labor Code provides as follows: "Section[] 510 . . . [does] not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

The Court finds that the CBA here satisfies each element of Section 514. First, the CBA expressly provides for the wages of Defendant's employees—in Section 10, Appendix A, and Appendix B. Second, the CBA provides for the hours of work; Section 5 concerns hours of work, and Section 6 defines overtime, describes the 24-7 alternate work week schedule, and governs payment of premium wage rates for all overtime claims. Third, the CBA provides for the working conditions of Defendant's employees in various provisions of the CBA, including Section 13 (holidays), Section 14 (vacations), Section 8 (disciplinary procedures), Sections 15-18 (leaves of absence), and Section 22 (general conditions). Fourth, the CBA provides premium wage rates for all overtime hours worked in Section 6. Fifth, the CBA provides a regular hourly rate of pay for employees of not less than 30 percent more than the state minimum wage.[3]

Plaintiff does not dispute the existence or validity of the CBA; he disputes only whether the CBA governs his overtime claim. Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings ("Opp."), Dkt. 27, at 4. The relevant language of the CBA provides that "[a]n employee will be paid

---

[3] According to Plaintiff's employment offer letter, his wage rate was set at $17 per hour. During the relevant period (2016 to 2018), the statutory minimum wage ranged from $10 to $11. Mot. 9. Thus, Plaintiff's regular rate of pay was, at all relevant times, no less than 30 percent more than the state minimum wage.

time and one-half (1-1/2) his regular straight-time hourly rate of pay *for all hours worked in excess* of eight (8) hours in any one day if assigned to a position working 5-8 hour days and time and one-half his hourly rate of pay for all hours worked in excess of ten (10) hours in any one day if assigned to a position working 4-10 hour days." CBA § 6.1 (emphasis added). Plaintiff argues that the CBA "does not specify whether the wage premium provided covers 'all overtime hours worked' as required by Section 514." Opp. at 5. In particular, he contends that the CBA contains an ambiguity, namely whether employees are entitled to overtime pay for all *actual* hours worked or only those hours that were *recorded*. In addition, Plaintiff asserts that the CBA does not address how wages for hours worked off-the-clock or during meal periods are to be calculated into the overtime rate—or if they are provided for at all.

The Court, however, finds Plaintiff's argument here to be without merit. The clear and natural reading of the phrase "for all hours worked in excess of . . ." is that it encompasses all actual hours worked, whether recorded or not. It is essentially equivalent to the phrase "for all overtime hours worked," and the purported ambiguity does not exist. *See Vranish v. Exxon Mobil Corp*, 223 Cal. App. 4th 103, 109-10 (2014) (holding that Section 514 renders Section 510 inapplicable, even if the CBA defines overtime differently than Section 510); *see also Perez v. Leprino Foods Co.*, 2018 U.S. Dist. LEXIS 47698, at *10-12 (E.D. Cal. Mar. 22, 2018); *Kilbourne v. Coca-Cola Co.*, 2014 WL 11397891, at *7-8 (S.D. Cal. July 14, 2014).

Because Section 514 bars Plaintiff's unpaid overtime claim as a matter of law, the unpaid overtime claim pursuant to Section 510 is DISMISSED WITH PREJUDICE.[4] However, this order does not preclude Plaintiff from seeking relief in arbitration for unpaid overtime pursuant to the CBA's overtime provisions.

Furthermore, because the unpaid minimum wages claim can only arise out of Defendant's failure to pay overtime wages,[5] the unpaid minimum wages claim is also DISMISSED WITH PREJUDICE.

---

4 *See Perez*, 2018 U.S. Dist. LEXIS 47698, at *12 (dismissing plaintiff's unpaid overtime claim without leave to amend because it was barred by Section 514).

5 Plaintiff does not contest Defendant's contention that, at all relevant times, Plaintiff was paid at least 30

*2. Unpaid Meal Period Premiums and Unpaid Rest Period Premiums Claims (Claims 2 and 3)*

*i. Preemption Analysis*

As discussed above, there is case law that applies in the specific context of preemption of state law unpaid meal period and unpaid rest period claims.

In *Valles*, 410 F.3d at 1078, the Ninth Circuit held that "the substantive [California state statutory] provisions mandating meal periods . . . [cannot] in any way be contravened or set aside by a private agreement, whether written, oral, or implied." *Id.* at 1078. This case established a per se rule that a CBA cannot preempt the right to meal periods provided for by California law. Similarly, the Ninth Circuit has observed, *Burnside*, 491 F.3d at 1066, n.14, that the California Court of Appeal held that state statutory rights related to rest periods were intended to be minimum substantive guarantees and too could not be waived or renegotiated by a CBA, *Zavala*, 143 Cal. App. 4th at 596. Thus, these cases alone are sufficient for this Court to conclude as a matter of law that Plaintiff's unpaid meal period premiums and unpaid rest period premiums claims are not preempted.

*ii. Exhaustion Analysis*

Defendant argues in the alternative that, even if Plaintiff's state law claims were not preempted by the LMRA, Plaintiff was required to exhaust the mandatory grievance procedure set forth in the CBA before bringing a lawsuit. Mot. 16. As noted above, the CBA contains three provisions that discuss a grievance procedure:

> Section 5.8: Any disputes concerning the application of this Section 5.8 shall be subject to final and binding arbitration pursuant to the [grievance] procedures set forth in Section 7 of this [CBA].

percent more than the statutory minimum wage (i.e., more than the minimum wage). Thus, it appears that this claim can only arise out of Defendant's alleged failure to pay overtime wages. Because the unpaid overtime claim is barred, the unpaid minimum wages claim necessarily fails.

> Section 7.1: Any disputes which arise as to the meaning, application or interpretation of the [CBA] (including all amendments to it, Addendum, Letters of Understanding and verbal agreements) shall be adjusted [pursuant to the grievance procedure].
>
> Section 7.7: During the term of this [CBA], all disputes, grievances, complaints and adjustments pursuant to this [CBA] shall be settled in accordance with the grievance and arbitration procedure outlined herein.

Plaintiff's first response to Defendant's exhaustion argument is that the CBA's grievance and arbitration procedures are not mandatory, because Defendant does not "point to any language in the CBA that would support a finding that the grievance and arbitration procedure is mandatory." Opp. 13. However, given that the CBA's grievance procedure provisions use the modal auxiliary verb "shall," whose "typical" meaning connotes a "duty" or a "require[ment] to" do something, Plaintiff's argument that the CBA lacks a mandate to use the grievance procedure is unavailing. Black's Law Dictionary (10th ed. 2014).

Plaintiff's second response is more persuasive. Plaintiff contends that, even if the mandatory grievance procedure set forth in the CBA is mandatory, it does not apply to state statutory rights. Opp. 14. The Supreme Court has held that "any CBA requirement to arbitrate . . . must be particularly clear" and that a union may waive employees' statutory rights only if the waiver is "clear and unmistakable." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79-80 (1998). Here, Plaintiff argues that he "seeks to enforce rights conferred on him . . . by the California Labor Code, not by the CBA," Opp. 14, and that the CBA does not contain any clear and unmistakable language precluding Plaintiff from filing a lawsuit alleging violations of state law. Even Defendant concedes the point by arguing that the "CBA 'clearly and unmistakably' mandates the grievance procedure *for violations of the CBA*."[6] Defendant's Reply

---

[6] Defendant also argues that *Maiava v. Brinderson Constructors, Inc.*, 2014 U.S. Dist. LEXIS 159670 (C.D. Cal. Sept. 11, 2014) advances its exhaustion argument. However, although that court did hold that a CBA's grievance and arbitration process "applie[d] to disputes" between an employer and its employees, *id.* at 23, the CBA's requirement to arbitrate was also much broader than the one here. The CBA in *Maiava* provided that "any

Memorandum in Support of Motion for Judgment on the Pleadings ("Rep."), Dkt. 28, at 7 (emphasis added). Although the CBA clearly and unmistakably provides a mandatory grievance procedure for alleged violations of the CBA, it does not do so for alleged violations of state law. Thus, Plaintiff cannot be said to have failed to exhaust his claims, and the Court declines to dismiss Plaintiff's claims on this ground.

*3. All Other Claims (Claims 5-10)*

The only argument made by Defendant specific to Plaintiff's other claims is that "Plaintiff's Fifth, Sixth, Seventh, and Tenth Causes of Action . . . are based on the First, Second, Third, and Fourth Causes of Action," and that "[b]ecause the underlying First through Fourth Causes of Action are preempted, these wholly derivative claims must be adjudicated in Defendant's favor as well." Mot. 15-16.

Of Plaintiff's first four claims, the Court is dismissing only Claims 1 and 4. Because it is not clear that Claims 5-10 are wholly derivative of *only* Claims 1 and 4, rather than Claims 1 through 4 as argued by Defendant, the Court cannot dismiss Claims 5-10 at this time.

## IV. Conclusion

The Court GRANTS Defendant's motion as to Claim 1 (unpaid overtime) and Claim 4 (unpaid minimum wages) and DISMISSES CLAIM 1 AND CLAIM 4 WITH PREJUDICE. The Court DENIES Defendant's motion as to all of the other claims.

IT IS SO ORDERED.

---

dispute or grievance regarding overtime, meal periods, rest periods or any other subject matter covered by any and all wage orders issued by the State of California . . . has been, and will be, processed under and in accordance with the dispute and grievance procedure set forth" in the CBA. *Id.* at 3-4. In the instant case, by contrast, the relevant provisions cited by Defendant refer to any disputes "concerning the application of," or "which arise as to the meaning, application or interpretation of," or "pursuant to" "*this [CBA]*." Rep. 7 (emphasis added).

: 

Initials of Preparer PMC